# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JAMAL COLEMAN,** *et al.***,**

    **Movants,**

    v.

**WESTPORT HOMES, INC.,**

    **Respondent.**

Civil Action 2:18-mc-31
Judge George C. Smith
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

In this miscellaneous action, Movants, Jamal Coleman and Sheena Coleman ("Movants"), seek an Order compelling Respondent, Westport Homes, Inc. ("Westport"), to produce documents in response to a November 29, 2017 subpoena (ECF No. 1-3) (the "Subpoena") issued in the underlying action, *Jamal Coleman, et al. v. Weyerhaeuser Company*, Case No. 1:17-cv-01093-VAC-SRF, pending in the United States District Court for the District of Delaware (the "Underlying Action"). As the Court for the district where compliance with the Subpoena is required, this Court has jurisdiction over the dispute pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i). This matter is before the Court for consideration of Movants' Motion to Compel Production of Documents (ECF No. 1), Westport's Opposition thereto (ECF No. 5), and Movants' Reply (ECF No. 7). For the reasons that follow, Movants' Motion is **GRANTED**, as set forth herein.

**I.**

On August 4, 2017, Movants initiated the Underlying Action by filing a class action complaint against Weyerhaeuser Company ("Weyerhaeuser"). Weyerhaeuser produces and sells joists for installation in homes and other structures. Movants allege that Weyerhaeuser produced and sold TJI Joists with Flak Jacket Protection (the "Joists"), a proprietary, factory-applied coating designed to enhance the Joists' fire resistance. Movants further allege that that the Joists are defective because the Flak Jacket Protection emits toxic formaldehyde fumes to extents that render the homes uninhabitable. According to Movants, the defective Joists affected thousands of homes around the country. Movants assert claims against Weyerhaeuser in the Underlying Action for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*), negligence, failure to warn, violations of the Delaware Consumer Fraud Act (Del. Code Ann. Tit. 6, § 2511, *et seq.*), and unjust enrichment, and they further seek relief under the Declaratory Judgment Act (28 U.S.C. § 2201, *et seq.*).

Movants contend that they have identified at least thirty-five (35) builders who were involved in the construction of new homes affected by the defective Joists, including Westport. According to Movants, Westport built and sold approximately 100 new homes containing the defective Joists. As such, Movants contend that Westport uniquely possesses relevant and discoverable information concerning the impact the Joists had on home value and marketability, as well as identifying information regarding class members.

Movants served Westport with the Subpoena on November 29, 2017, requesting production of 18 categories of documents. (ECF No. 1-3.) Following Westport's objections and various meet-and-confer efforts, the parties were able to reach agreement with respect to 10 out of the 18 categories of documents, whether through Westport's production of documents or

Movants' agreement to forego certain requests. In briefing related to the instant dispute,

Movants agreed to forego their request for an additional four categories of documents (*see*

Movant's Reply 5 n.2, ECF No. 7, wherein Movants abandon their request to compel categories

5 through 8 set forth in their Motion), leaving this Court to resolve the parties' dispute over

whether Westport must produce the following remaining four categories of documents:

1. All documents related to diminution in value of homes due to the defective Joists;

2. Purchase and sale agreements for all homes in the same development as affected homes, along with document sufficient to determine which homes have similar layouts or features and which homes did or did not have the Joists;

3. Documents sufficient to show how long homes with defective Joist remained on the market in comparison with homes that did not have defective Joists; and

4. All disclosures to buyers and realtors regarding the defective Joists, formaldehyde, or remediation, as well as all related communications.

Movants maintain that the foregoing documents are relevant to the Underlying Action to determine how the Joists affected the value and marketability of homes containing the Joists.

Westport counters that as a custom home builder it does not possess many of the documents Movants request, and insists that the remaining documents are irrelevant to the Underlying Action. Specifically, Westport contends that of the homes it built using the Joists (the "Affected Homes"), the sale on only five fell through because of the defective Joists (the "Five Failed Closing Homes"). Westport maintains that the Joists had no effect on the value or marketability of the remaining Affected Homes, as those homes either were already occupied at the time the defect in the Joists was discovered or sales closed on the homes despite the defect. Thus, Westport maintains, the only documents it possesses that could be relevant to the

Underlying Action are purchase and sales documents related to the Five Failed Closing Homes, and it has already produced those documents, albeit in redacted form.

In addition, Westport argues that as a custom home builder, the majority of the homes it constructs are built for a specific buyer, not as inventory homes to place on the market, such that it has no relevant information concerning how long Affected Homes remained on the market. Westport acknowledges that it constructs a small number of inventory homes (the "Select Inventory Homes"), but maintains that only four of its Select Inventory Homes contained defective Joists, and the Joists had no effect on the price or marketability of those homes. Thus, documents related to its Select Inventory Homes are irrelevant, according to Westport. The Court considers the parties' arguments in the context of each category of documents below.

## II.

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Fed. R. Civ. P. 45. Rule 45 permits parties in legal proceedings to command a non-party to attend a deposition, produce documents, and/or permit inspection of premises. Fed. R. Civ. P. 45(a)(1). The Rule provides that the person commanded to produce documents may serve an objection on the party or attorney designated in the subpoena within the earlier of fourteen days after the subpoena is served or the time specified for compliance. Fed. R. Civ. P. 45(d)(2)(B). If the commanded person objects, as Westport does here, "the serving party may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i).

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is

4

traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1), which sets forth the permissible scope of discovery, provides as follows:

> **(1) Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, J.) (quoting *Clumm v. Manes*, No. 2:08–cv–567, 2010 WL 2161890 (S.D. Ohio May 27, 2010) (King, J.)); *see also Berryman v. Supervalu Holdings, Inc*., No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio Nov. 18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information." (internal citation omitted)).

Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." *Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316, at *4 (S.D. Ohio April 17, 2015) (citing Fed. R. Civ. P. 45(d)(3)(A)(iii),(iv)). "In determining whether a subpoena imposes an undue burden, a court considers 'such factors as relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described

5

and the burden imposed.'" *Kacmarik v. Mitchell*, No. 1:15CV2062, 2017 WL 131582, at *4 (N.D. Ohio Jan. 13, 2017) (quoting *Hogan v. Cleveland Ave. Rest., Inc.*, No. 2:15-cv-2883, 2016 WL 7467968 at *2 (S.D. Ohio Dec. 28, 2016) (citing *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Ultimately, "[c]ourts must balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, No. 17-2256, 2018 WL 1959536, at *4 (6th Cir. Apr. 26, 2018) (citations and quotations omitted).

## III.

Applying the foregoing standards here, the Court finds Movant's Motion to be well taken. The Court considers each of the four categories of requested documents below.

### A. Diminution in Home Value

In the first category, Movants seek to compel all documents related to diminution in value of homes due to the defective Joists, pursuant to Request No. 17 of the Subpoena. Movants maintain that the requested documents are relevant to ascertaining damages. Although Movants acknowledge that Westport has produced redacted versions of the original and final purchase agreements for the Five Failed Closing Homes, they contend that the redactions conceal relevant information, including whether various components of the sales price or the inclusion of custom options changed after the defect in the Joists was disclosed. Westport has produced no documents related to the remaining Affected Homes, including the Select Inventory Homes. The final purchase contracts for the remaining Affected Homes contain the arbitration clause that applies to each class member, which Movants contend is relevant to determining whether each class member must arbitrate their claims, as Weyerhaeuser has apparently alleged in the Underlying Action.

6

Westport responds that purchase and sales documents for Affected Homes beyond just the Five Failed Closing Homes lack relevance. Specifically, according to Westport, only the Five Failed Closing Homes could have suffered diminution in value due to the defective Joists given that the remaining Affected Homes were either already occupied when the defect was discovered or the sales went through despite the defect. In support of its redaction of information relating to custom options, Westport submits that (1) the redaction was necessary to prevent its competitors from acquiring proprietary information about what it charges for custom options and (2) that the redacted information is irrelevant to diminution in value. With respect to its concerns about its proprietary information, Westport acknowledges the existence of a stipulated protective order in the Underlying Action, but nevertheless questions Movants' "intent of the use" of its proprietary information, pointing out that Movants have subpoenaed thirty-four (34) of Westport's competitors and "could potentially further involve them in the litigation." (Westport Op. 8, ECF No. 5.) Finally, Westport contends that because the arbitration clause contained in the documents related to the Five Failed Closing Homes is the same clause found in purchase contracts for the remaining Affected Homes, the purchase documents for the remaining Affected Homes are not relevant to a determination of whether each class member may be compelled to arbitration.

The Court concludes that the requested documents are relevant and discoverable. First, the information that Westport redacted from the small handful of documents it has produced is relevant to determining whether prices for or the inclusion of custom options changed after the defect in the Joists was disclosed to the homebuyer, which could reflect changes in home value and affect Movants' damages analysis. The early and final drafts of purchase contracts related to the remaining Affected Homes are equally relevant, particularly with respect to sales that closed

after the defect in the Joists was disclosed, as Westport could have modified the price for or inclusion of custom options to offset any diminution in value caused by the defect. In addition, purchase data for homes already occupied when the defect was disclosed could be compared with data for Affected Homes that sold after disclosure to help determine any effect on home value. The purchase contracts for all Affected Homes are also relevant to Weyerhaeuser's defense that some or all class members must arbitrate their claims. Although Westport may use the same arbitration provision in its form purchase agreements, the buyer could have modified the language before signing. Movants are entitled to the precise arbitration provision that governs each class member's claim; that is, they are not required to accept Westport's representation that the provision remained unchanged.

The Court is unpersuaded by Westport's argument that the Stipulated Protective Order in the Underlying Action is insufficient to protect against the improper use or disclosure of its proprietary information and trade secrets. Westport fails to articulate how the Stipulated Protective Order is purportedly inadequate. *See*, *e.g.*, *McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09-CV-11165, 2010 WL 2560047, at *10 (E.D. Mich. June 14, 2010) (declining to quash Rule 45 subpoena despite argument that "the documents may reveal trade secret or other confidential information" because "the allegation of harm is speculative and lacks specificity and there is already a stipulated protective order in place which contemplates the designation of 'confidential' to documents produced by a non-party"). Moreover, the Court's review of the Stipulated Protective Order reveals that it includes a provision under which non-parties like Westport can designate documents as "Confidential Information" or "Highly Confidential – Attorney Eyes Only." (*See* United States District Court for the District of Delaware Case No. 1:17-cv-1093, ECF No. 17 at 4-5.) Further, Movants have indicated a willingness to work with

Westport to ensure Westport's documents are designated appropriately such that they are adequately protected. (Movants' Reply 3, ECF No. 7.)

Accordingly, the parties are **DIRECTED** to meet and confer to reach agreement as to the protection of Westport's proprietary and trade secret information, consistent with the terms of the Stipulated Protective Order in the Underlying Action. The Court expects that the parties will be able to reach agreement using the confidentiality designations provided in the Stipulated Protective Order. Once agreement is reached, Westport is **ORDERED** to produce all documents related to the diminution in value of homes due to the defective Joists, including unredacted versions of the documents it has already produced relating to the Five Failed Closing Homes, as well as unredacted early and final purchase and sales documents related to all remaining Affected Homes.

### B. Homes in the Same Developments as Affected Homes

Movants next seek to compel purchase contracts for homes in the same developments as any affected home, along with documents sufficient to determine which of these unaffected homes have layouts or features similar to the Affected Homes and which homes have have defective Joists, pursuant to Request No. 16 of the Subpoena. According to Movants, these documents are relevant and necessary for their experts to assess damages related to diminution in value and decreased marketability of the Affected Homes, as well as to identify putative class members.

Westport maintains that this category is overly broad because it includes documents related not just to homes that contained defective Joists, but homes that did not contain defective Joists that are located in a development with an Affected Home. Westport further maintains that the requested documents are irrelevant, pointing out that purchase agreements for unaffected

homes will not identify putative class members. Moreover, Westport insists that the documents "would not provide any information related to diminution or decreased marketability" because these custom homes were designed especially for each owner and thus "did not sit on the market." (Westport Op. 9, ECF No. 5.) Rather, the only homes that are relevant to a purported diminution in value, according to Westport, are the five Failed Closing Homes for which Westport has already produced documents.

The Court concludes that the requested documents are relevant and discoverable. First, purchase data for unaffected homes in the same development as Affected Homes, including final purchase price and prices for and the inclusion of custom options, can be compared with similar data for Affected Homes to ascertain any impact the Joists had on home value and therefore damages. Accordingly, Westport is **ORDERED** to produce purchase contracts for all homes located in a development with an Affected Home, along with documents sufficient to determine which homes have similar layouts or features and which homes have defective Joists, from one year prior to the date the defect in the Joists was first disclosed to Westport through one year after the date Westport closed on the sale of the last Affected Home.

### C. Length of Time on Market

Movants next seek to compel documents sufficient to determine how long Affected Homes remained on the market in comparison to unaffected homes, pursuant to Request No. 17 of the Subpoena. Movants contend that such documents are relevant to its damages analysis.

Westport insists that as a custom home builder, it has no "documents whatsoever concerning how long homes remain on the market." (Westport Reply 7, ECF No. 5.) Although Westport acknowledges that it installed Joists in four Select Inventory Homes, it contends that "the Joist had no impact whatsoever" on the price of these homes or the time they spent on the

market, and therefore documents for the affected Select Inventory Homes are irrelevant. (*Id.*) The Court disagrees.

Information related to the time the affected Select Inventory Homes remained on the market in comparison to unaffected Select Inventory Homes is relevant to damages. If affected Select Inventory Homes remained on the market longer than unaffected Select Inventory Homes, that would suggest the defective Joists caused a decrease in marketability. Movants are not required to take Westport at its word that the Joists had no impact on the marketability of affected Select Inventory Homes, particularly in the absence of any evidence of undue burden or expense associated with producing the requested documents. Accordingly, Westport is **ORDERED** to produce documents sufficient to show how long homes with defective Joists remained on the market as compared to homes without defective Joists, including documents sufficient to determine how long affected Select Inventory Homes remained on the market in comparison with similar unaffected Select Inventory Homes.

### D. Communications with Buyers and Realtors

Lastly, Movants seek to compel copies of the disclosures Westport provided to actual and prospective buyers and realtors regarding the defective Joists, formaldehyde, or remediation, as well as any related communications, pursuant to Request No. 6 of the Subpoena. Movants contend that these documents are relevant to determining how the Joists manifested the defect, as well as damages related to decreased marketability or diminution in value. Movants explain that knowledge of whether Westport disclosed the defect to prospective homebuyers will permit them to evaluate whether a link can be established between the defect and resale value or increased time on the market. By way of example, Movants submit that Westport's failure to disclose the

defect (or only partial disclosure) could explain any absence of a change in price or an effect on marketability.

Westport counters that it produced the form letter it sent to home buyers and realtors and contends, without meaningful explanation, that responsive documents beyond this form letter lack relevance. Westport fails to address Movants' argument that the fact, nature, and extent of the disclosures and related communications could establish a relationship between what actual or potential buyers knew about the defective Joists and any effect on home value or marketability.

The Court finds that copies of the disclosures, not just the form letters, that Westport provided to actual and prospective buyers and realtors, as well as any related communications, are relevant and discoverable for the reasons Movants articulate. Further, as Movants point out, one would expect that the disclosures would have generated follow up communications, particularly with respect to at least the Five Failed Closing Homes, and potentially with respect to other Affected Homes. As such, Westport is **ORDERED** to produce copies of all disclosures it provided to actual and prospective buyers and realtors regarding the defective Joists, as well as all related communications.

**IV.**

In sum, Movants' Motion to Compel (ECF No. 1) is **GRANTED**. The parties are **DIRECTED** to meet and confer in an effort to reach agreement on appropriate confidentiality designations to protect against the improper use or disclosure of Westport's proprietary and trade secret information. The Court expects that the parties will be able to reach agreement using the confidentiality designations provided in the Stipulated Protective Order in the Underlying Action. Once such agreement is reached, Westport is **ORDERED** to produce unredacted versions of the documents falling within the four categories set forth above.

**IT IS SO ORDERED**.

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE